887 F.2d 1088
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Elaine Griffin GARDNER, also known as Elaine Hilda Gardner,
also known as Roxanne Gardner, also known as
Elaine Garner, Defendant-Appellant.
 No. 88-6370.
 United States Court of Appeals, Sixth Circuit.
 Oct. 17, 1989.
 
 Before WELLFORD and RYAN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 CONTIE, Senior Circuit Judge.
 
 
 1
 Defendant Elaine Griffin Gardner appeals from her conviction by jury verdict of violating 18 U.S.C. App. Sec. 1202(a)[1] and 26 U.S.C. Sec. 5861(d).[2] For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 On June 30, 1985, the Knoxville, Tennessee Police Department received an anonymous telephone call informing them of criminal activity in the Mechanicsville/College Homes area of the city.[3] The informant told the police that a black man, a white man and a white woman were selling whiskey out of the trunk of a car, were carrying shotguns, and had chased a man down the street. He described the car as a 1969 Dodge Charger. He gave the police the license number and told them that the rear window of the car was missing.
 
 
 3
 Later that day, Officer Neeley of the Knoxville Police saw a vehicle which matched the description given by the anonymous informant. A white man and woman were driving in the car. The occupants were later identified as Brian Milton McCollum, the driver, and appellant, the passenger. Officer Neeley followed the vehicle for a short while, and when a car that had been travelling between the police car and the suspect car turned leaving the police car directly behind the suspect car, Officer Neeley turned on his flashers and the suspect car pulled over. As Officer Neeley left his car, he noticed the driver of the suspect car lean forward and reach down. Fearing for his safety, Officer Neeley got his shotgun, pointed it at the suspects and ordered them to place their hands on the ceiling of the car. Officer Neeley directed the driver to leave the car. As he did, Officer Neeley saw six to eight inches of the stock and chamber of a double-barrelled shotgun sticking out from under the driver's seat. Appellant was also directed to leave the car. As this was done, Officer Neeley saw the stock of a second shotgun sticking out from under her seat. In the area between the seats, a paper bag containing twenty-gauge shotgun shells and a police scanner were found. A third shotgun was also found in the car.
 
 
 4
 Appellant was charged with the state offense of carrying a weapon with the intent to go armed. Tenn. Code Ann. Sec. 39-6-1701 (1982). She subsequently pleaded guilty to the misdemeanor charge and was sentenced to twelve days, which was time served.
 
 
 5
 On January 18, 1988, appellant and her co-defendant, McCollum, were charged with various firearm offenses in a multi-count indictment. Appellant was charged in two counts with being a felon in possession of a firearm and possessing an unregistered firearm. Appellant filed a motion to suppress evidence seized as a result of the stop made by the Knoxville police and a motion for severance. Both motions were denied.
 
 
 6
 At a jury trial, the government introduced the physical evidence seized after the stop by the Knoxville police and also introduced appellant's state court guilty plea. Appellant attempted to elicit testimony from her state court attorney relating to conversations concerning the reasons for her guilty plea. The district court sustained objections to this line of questioning, finding it to be inadmissible hearsay. Appellant was found guilty on both counts of the indictment. Appellant timely appeals.
 
 
 7
 Appellant raises the following arguments: (a) the district court erred in failing to suppress the evidence seized as a result of the stop of the co-defendant's car; (b) the district court erred in failing to grant a severance; (c) the district court erred in admitting her state court guilty plea; (d) the district court erred in failing to allow the hearsay testimony of her state court defense counsel relating to the reasons for her guilty plea in state court; and (e) there was not sufficient evidence to support the conviction.
 
 II.
 A.
 
 8
 Appellant argues that the stop based on an anonymous tip violated the fourth amendment and, therefore, the district court erred in failing to suppress evidence seized as a result of the stop.
 
 
 9
 The Supreme Court has acknowledged police authority to stop a person "when the officer has reasonable articulable suspicion that a person has been, is, or is about to be engaged in criminal activity." United States v. Hensley, 469 U.S. 221, 227 (1985). Reasonable suspicion may be based on a tip from an informer. Adams v. Williams, 407 U.S. 143, 147 (1972).
 
 
 10
 In United States v. Andrews, 600 F.2d 563, 570 (6th Cir.), cert. denied, 444 U.S. 878 (1979), this court stated that "information from an unknown informant will support a stop if sufficiently detailed and/or corroborated." In Andrews, an anonymous informant told a DEA agent the suspect's name and description, the flight on which he was arriving and the types of drugs which he was carrying for delivery to a known drug dealer. The DEA agents stopped the suspect who matched the description given by the informant and was arriving on the flight that the informant had indicated. This court held that the informant's tip coupled with the agents' knowledge and observations were enough to justify the stop.
 
 
 11
 In recommending that the motion to suppress be denied, the magistrate in the instant case relied on United States v. McClinnhan, 660 F.2d 500 (D.C.Cir.1981). In McClinnhan, the police received an anonymous tip that a black man wearing blue jeans, a black coat and a black hat was carrying a shotgun in a briefcase at a certain location. After receiving a radio report of the tip, police saw a man matching the description. The man was standing near a briefcase. The police conducted an investigative stop, and seized and searched the briefcase, discovering the shotgun. The court relying on United States v. White, 648 F.2d 29 (D.C.Cir.), cert. denied, 454 U.S. 924 (1981), (an investigative detention could properly be based on an anonymous tip, if the officers had legitimate reasons to believe that the tip was reliable), found the stop justified under the circumstances of that case.
 
 
 12
 In reaching this result, the court noted the potential problem that could arise when investigative stops are based on anonymous tips. "We are mindful that the investigative stop is a significant intrusion into personal privacy, and that it is possible for anyone with a grudge to fabricate a tip whose neutral details, such as clothing or location, would provide the corroboration required by the White decision for a stop." McClinnhan, 660 F.2d at 502. The court went on to note, however, that the White court had been persuaded that this potential for abuse was outweighed by the only alternative police would have to the investigative stop.
 
 
 13
 We think that Officers Bryant and Bement were confronted with the same unappealing choice. Either they stopped McClinnhan on the basis of the tip as corroborated by their observation or they could at best follow him through the streets of Washington hoping he would commit a crime, or at least brandish the weapon, out of doors, rather than walking inside a dwelling, and thus beyond police purview, before putting the shotgun to its intended use. Either they ignored their reasonable suspicion, or they took some action. We think that where their suspicion has some objective foundation, the Fourth Amendment does not, particularly where the reported contraband is a weapon as lethal as a sawed-off shotgun, require a police officer to ignore his well-founded doubts and accordingly will permit an investigative detention.
 
 
 14
 Id. at 502-03.
 
 
 15
 The government argues that the corroborated tip along with the knowledge of the police justified the stop in the instant case. It points to the following factors to support its argument:
 
 
 16
 --the events described by the caller were consistent with the area (a high crime area) where the alleged incidents occurred;
 
 
 17
 --the police knew crimes of the nature described by the informant occurred frequently in that area;
 
 
 18
 --the car generally matched the description given by the informant--the make and model, rear window missing;
 
 
 19
 --the license number matched the number given by the informant;
 
 
 20
 --the two occupants matched the general description of two of the three individuals noted by the informant;
 
 
 21
 --the stop occurred three blocks from the location noted by the informant.
 
 
 22
 Appellant argues that the fact that no significant details concerning the description of the occupants of the car were given by the informant plus the length of time between the tip and stop (approximately four hours) lowers the reliability of the tip and the reasonableness of the police officer's reliance in making the stop. The timeliness aspect of appellant's argument was addressed and disposed of by the Eighth Circuit in United States v. McBride, 801 F.2d 1045, 1048 (8th Cir.1986), cert. denied, 479 U.S. 1100 (1987), a case relied on by appellant for the proposition that a time lag between the tip and the stop seriously reduces the reliability of the tip. Appellant's reading of McBride is far too limiting, however. The Eighth Circuit noted that a time lag would be a problem had the police only acted on a general description of a vehicle. However, the court found that because in that case, the police had a specific license number for the suspected vehicle the time lag concern was ameliorated.
 
 
 23
 We are persuaded by the government's arguments. The fact that the police discovered a car which matched the description given by the informant--including the license number and the rather unusual feature of no rear window--coupled with the discovery of the car near the alleged crime scene, which was in a known high crime area, leads to the conclusion that the tip was sufficiently detailed and corroborated to justify the stop. Accordingly, the district court did not err in failing to suppress the fruits of the stop.
 
 B.
 
 24
 On the Thursday before trial, appellant filed a motion to be tried separately from her co-defendant. She alleged that if tried separately, her co-defendant would provide exculpatory testimony on her behalf. The district court denied the motion on the alternative grounds that, according to local rules, the motion was filed late and that appellant had failed to demonstrate compelling prejudice warranting the severance. Appellant argues that the district court erred in denying this motion.
 
 
 25
 Appellant argues that the district court abused its discretion in denying the motion to sever. The motion was supported by an affidavit of counsel which stated that he had met with appellant's co-defendant and he had expressed a willingness to plead guilty and testify on her behalf. He alleged that appellant's co-defendant would testify that the car and weapons belonged to him and that at no time did appellant touch them or exercise control over them.
 
 
 26
 In ruling on this motion, the district court stated that there had been no clear showing that the co-defendant would, in fact, waive his fifth amendment privileges or be available to testify if the cases were severed, nor was the degree to which the testimony would be exculpatory shown.
 
 
 27
 This court summarized the standards for reviewing a denial of a severance motion in United States v. Davis, 809 F.2d 1194 (6th Cir.), cert. denied, 483 U.S. 1007 (1987):
 
 
 28
 This court may reverse the district court's denial of a Rule 14 motion for severance only for an abuse of discretion. Moreover, the general rule is that parties who are jointly indicted should be tried together. In order to escape the general rule, the defendant must carry the 'heavy burden of showing specific and compelling prejudice resulting from a joint trial which can be rectified only by separate trials.' The Supreme Court has held in United States v. Lane, --- U.S. ----, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986), that even if there is misjoinder under Rule 8, the error requires reversal only 'if the misjoinder results in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict.' Lane, --- U.S. ----, 106 S.Ct. at 732. Otherwise, where there is 'overwhelming evidence of guilt', the claimed error is harmless. Id. Another factor we must consider is that even if the defendants establish a harmful effect on the jury, this must be balanced against the need for speedy and efficient trials.
 
 
 29
 Id. at 1207 (citations omitted).
 
 
 30
 The government notes that the only showing made by appellant was an affidavit from her counsel. No affidavit from the co-defendant or his counsel relevant to his intentions to plead guilty, waive his fifth amendment privileges, or testify on appellant's behalf were presented. Under these circumstances, the government argues that the district court did not abuse its discretion in finding that appellant did not make a sufficient showing that her co-defendant would provide exculpatory evidence if there was a severance.
 
 
 31
 We agree with the government's position. Given appellant's failure to provide any evidence to corroborate her attorney's affirmations concerning her co-defendant's intentions, appellant did not meet her heavy burden of showing specific and compelling prejudice resulting from the joint trial. Accordingly, the district court did not abuse its discretion in denying the motion.
 
 
 32
 Furthermore, this court finds that the district court did not abuse its discretion in denying appellant's motion for severance on procedural grounds. Appellant failed to raise the issue prior to the pretrial cut-off date, in accordance with Fed.R.Crim.P. 12(b)(5) and (c), thereby waiving it pursuant to Fed.R.Crim.P. 12(f). Appellant similarly failed to renew the severance motion at the close of all of the evidence, thereby waiving it in accordance with United States v. Swift, 809 F.2d 320, 323 (6th Cir.1987).
 
 C.
 
 33
 Appellant argues that her guilty plea to the state court charge should not have been admitted because she was not made aware of the consequences of the plea and, therefore, it cannot be said that the plea was knowingly entered.[4]
 
 
 34
 Appellant relies on United States v. Edwards, 669 F.Supp. 168 (S.D. Ohio 1987). In Edwards, another firearms case, the court suppressed judicial admissions made during a federal defendant's guilty plea in state court. The court reasoned that because the defendant "did not know the nature of the charge against him and the consequences of his guilty plea ... his guilty plea was not knowingly made." Id. at 171.
 
 
 35
 The government argues that there is no requirement for states to warn of such collateral consequences of guilty pleas and that the failure to so warn does not make such pleas constitutionally infirm. The government relies on the language of Federal Rule of Criminal Procedure 11, Tennessee Rule of Criminal Procedure 11 and Hill v. Lockhart, 731 F.2d 568, 570 (8th Cir.) aff'd 474 U.S. 52 (1985) (due process does not require that a defendant be advised of all possible collateral consequences of his plea). It argues that the fact that such a failure does not affect the constitutionality of the plea supports its view that such a plea can be used in a subsequent proceeding.[5]
 
 
 36
 The government distinguishes Edwards by noting that in that case, the defendant had raised the infirmity of the state court plea before trial in the district court while appellant, in the instant case, has raised this specific argument for the first time on appeal, and by noting that the fact that the defendant in Edwards was not warned that his plea could be used against him in a subsequent federal prosecution was clearly established, while in the instant case, no factual determination was made concerning appellant's knowledge of these consequences.
 
 
 37
 We agree that appellant's failure to raise this issue below and make a record on the issue of her knowledge of the consequences, severely weakens this argument.
 
 
 38
 Although the guilty plea was the major piece of evidence supporting appellant's conviction, the fact that she has not shown that the plea was not knowingly made coupled with the fact that a warning concerning the collateral use of the plea is not required by the Constitution, the Federal Rules, or the Tennessee Rules, leads us to conclude that the district court did not err in admitting this evidence.
 
 D.
 
 39
 Appellant challenges the district court's ruling excluding the testimony of her state court counsel related to conversations she had with him concerning the reasons for her plea. She argues that due to statements elicited during cross-examination, these hearsay statements should have been admitted. The district court did not admit these statements based on the hearsay rule.
 
 
 40
 Error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected and an objection has been made, and the substance of the evidence was made known to the court by offer or was apparent from the context of the question asked. Fed.R.Evid. 103(A)(1)(2).
 
 
 41
 Appellant concedes that her questions asked on direct and redirect were an attempted elicitation of hearsay statements. She bases her argument on the proposition that the following portion of the cross-examination has raised the impression that the only reason for the guilty plea was that she was indeed guilty and, therefore, she should have been allowed to admit testimony on redirect from her counsel relative to her stated reasons for her plea:
 
 
 42
 Q And there was nothing--have you reviewed your file since this particular case came up, this particular case in trial here?
 
 
 43
 A What file I have. I've looked at it, yes.
 
 
 44
 Q And there's no indication of her maintaining her innocence of that charge, was there?
 
 
 45
 A No.
 
 
 46
 Appellant relies on United States v. Womochil, 778 F.2d 1311 (8th Cir.1985) in which the Eighth Circuit stated that "[t]his court has repeatedly allowed the use of otherwise inadmissible evidence on redirect examination to clarify or complete an issue opened up by defense counsel on cross-examination." Id. at 1315. The Eighth Circuit also noted that the scope of redirect examination is within the sound discretion of the district court. Id.
 
 
 47
 The government argues that because appellant failed to make an offer of proof as to the exclusion of the testimonial evidence on redirect, and because the answer to the questioning was not apparent, appellant waived this argument. We need not address this argument. Appellant was able to elicit from her counsel testimony that as a result of her guilty plea she was able to get out of jail and that Tennessee General Sessions Court warrant forms only gave the defendant the options of pleading guilty or not guilty. Given this testimony, we believe appellant was able to present her theory behind the guilty plea, which is that the plea was entered into for reasons other than her guilt. Therefore, because the rights of the appellant were not affected by this ruling, the district court did not abuse its discretion in restricting the scope of the redirect examination to exclude the hearsay testimony.
 
 E.
 
 48
 Finally, appellant argues that evidence introduced below was insufficient to support her conviction.
 
 
 49
 A jury verdict must stand if there is substantial evidence, taking the view most favorable to the government to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). On review of the sufficiency of the evidence, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).
 
 
 50
 The essence of appellant's sufficiency of the evidence argument goes to the element of possession of the firearms. She argues that the evidence does not show that she had actual or constructive possession of the firearms.
 
 
 51
 Possession may be either actual or constructive and it need not be exclusive but may be joint. Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. Both actual possession and constructive possession may be proved by direct or circumstantial evidence. It is not necessary that such evidence remove every reasonable hypothesis except that of guilt.
 
 
 52
 United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.) (citations omitted), cert. denied, 414 U.S. 866 (1973).
 
 
 53
 Appellant argues that there was not sufficient evidence to prove that she had constructive possession of any of the firearms present in her co-defendant's car. She relies on United States v. Gates, 491 F.2d 720 (7th Cir.1974) where the Seventh Circuit held that the fact that the defendant appeared nervous, looked over his shoulder, and appeared to be doing something with his hands before he was ordered out of a vehicle in which he was a passenger was insufficient evidence to prove that he had constructive possession of a firearm which was protruding from under the seat in which he was sitting. She also relies on this circuit's ruling in United States v. Brimley, 529 F.2d 103 (6th Cir.1976), in which this court held that:
 
 
 54
 Since the evidence against Sexton consists almost exclusively of his presence as a passenger in the rear seat of the vehicle, it is our view that the evidence is quite insufficient to support either a conviction for illegal possession of unregistered firearms or aiding and abetting in their possession.
 
 
 55
 Id. at 107 (footnote omitted). See also United States v. Beverly, 750 F.2d 34, 37 (6th Cir.1984) (evidence that defendant was present in another's house, was standing close to a waste basket which contained two handguns, and that he had at some point touched one of the guns is insufficient to prove constructive possession). Appellant acknowledges that her task is made more difficult than the defendants' tasks in the above cases by the evidence of her guilty plea to the charge of carrying a weapon with the intent to go armed. She argues that the circumstances of the plea, high bond, the length of time she had been incarcerated and the minor nature of the crime, reduce the reliability of the plea as an admission. While appellant's argument may be true, i.e., these considerations may reduce the reliability of the plea, we do not believe these facts make the plea so unreliable that it does not support the alternate finding of guilt.
 
 
 56
 Accordingly, given the totality of the evidence, we hold that there was sufficient evidence to support the jury's verdict.
 
 
 57
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 58
 RYAN, Circuit Judge, concurring separately.
 
 
 59
 I concur in the court's affirmance of the judgment of the district court. My reasons differ slightly, however, from those announced by my colleagues.
 
 
 60
 As to the issue raised in part II.B of my brother's opinion, I agree that the district court did not err in denying the defendant's motion for severance; but I do so solely because the defendant waived the severance issue by failing to raise the matter prior to the pretrial motion cut-off date, Fed.R.Civ.P. 12(b)(5)(c), or at the close of the evidence. See United States v. Swift, 809 F.2d 320, 323 (6th Cir.1987).
 
 
 61
 My colleagues and I agree that the district court committed no error warranting reversal in excluding the testimony described in part II.D of my brother's opinion, but my agreement rests entirely upon the fact that this assignment of error was waived when the defense counsel failed to preserve the issue for appeal by complying with the requirements of Fed.R.Evid. 103(a)(2) which provides:
 
 
 62
 (a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
 
 
 63
 * * *
 
 
 64
 * * *
 
 
 65
 (2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
 
 
 66
 If the purpose for which the excluded evidence was offered was for a relevant purpose other than to prove the truth of the matter asserted in the challenged statements, the excluded testimony would not have been inadmissible hearsay. But we shall never know whether the evidence was admissible for such a purpose because counsel for the appellant did not make known to the trial court the purpose for which the challenged testimony was being elicited.
 
 
 67
 With the foregoing exceptions, I concur in my brother's opinion and, of course, in the court's judgment of affirmance.
 
 
 
 [1]
 Section 1202(a) reads in relevant part as follows:
 Sec. 1202. Receipt, possession, or transportation of firearms
 (a) Persons liable; penalties for violations Any person who--
 (1) has been convicted ... of a felony, ... and who receives, possesses, or transports in commerce or affecting commerce, ... any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.
 
 
 [2]
 Sections 5861(d) makes it unlawful for any person to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record
 
 
 [3]
 This part of the city is a high crime area
 
 
 [4]
 Appellant concedes that a guilty plea is an admission of all of the elements of an offense charged, McCarthy v. United States, 394 U.S. 459 (1969), and that admissions are admissible under Federal Rule of Evidence 801(d)(2)
 
 
 [5]
 Appellant does not argue that her plea was constitutionally infirm, or that a warning that the plea could be used against her was constitutionally mandated. Rather she merely asserts that the failure to so warn makes the plea inadmissible in a subsequent proceeding